

FILED
JUL 0 8 2011
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| DOROTHY PAULSEN,<br>Plaintiff,<br><br>vs.<br><br>ABILITY INSURANCE CO., f/k/a ABILITY RESOURCES, INC. and MEDICO LIFE INSURANCE CO.; ABILITY REINSURANCE HOLDINGS LTD., a Bermuda Ltd. Co.; and ABILITY REINSURANCE LTD., a Bermuda Ltd. Co.,<br>Defendants. | CIV. 11 - 1019<br><br>**Complaint** |

Plaintiff Dorothy Paulsen, for her complaint against the Defendants, states:

**PRELIMINARY STATEMENT OF JURISDICTION AND PARTIES**

1. Dorothy Paulsen is an 83 year old resident of Benet Place Assisted Living Center, an assisted living care facility in Watertown, South Dakota.

2. The defendants are corporate entities with their principal places of business outside the State of South Dakota.

3. The amount in controversy exceeds $75,000.

4. There is diversity of citizenship among the parties, and jurisdiction is based on 28 U.S.C. §1332.

5. Ability Resources, Inc. was the purchaser of a closed block of long-term care policies issued by Medico Life Insurance Co., including a long-term care policy Medico Life Insurance Co. had issued and sold to Dorothy Paulson.

6. Ability Resources, Inc. subsequently changed its name to Ability Insurance Co.

7. Premiums paid on the closed block of long-term care policies are diverted to Ability Reinsurance Holdings Ltd. and Ability Reinsurance Ltd., two Bermuda limited companies, in the form of re-insurance premiums.

8. Defendants are alter egos or instrumentalities of each other.

9. Defendants are an association of entities acting together for the common purpose of engaging in the business of insurance.

## Count 1- Breach of Contract

10. In November 1996 Medico Life Insurance Co. sold Dorothy Paulsen a long-term care policy.
11. The long-term care policy sold to Dorothy Paulsen was among the block of long-term care policies that Ability Resources, Inc. later purchased from Medico Life Insurance Co.
12. Under the terms of Ability Resources, Inc.'s purchase of the closed block of long-term care policies, Ability Resources Inc. acquired control of approximately 600 million dollars reserved to pay claims under those policies, in exchange for Ability Resources, Inc.'s payment of 12 million dollars and its assumption of the responsibility for adjusting, managing, and paying claims under the policies.
13. Ability Insurance Co. has assumed the responsibility to adjust, manage, and pay claims as appropriate under Dorothy Paulsen's long-term care policy.
14. Ability Insurance Co. has from time to time increased Dorothy Paulsen's premiums.
15. Dorothy Paulsen or her representative has always paid the premiums due under her policy.
16. Dorothy Paulsen's long-term care policy provides benefits of sixty-four dollars a day (80% of eighty dollars a day) for qualified assisted living care when that care is deemed medically necessary by the policyholder's treating physician.
17. In January of 2010, Dorothy Paulsen's treating physician, Dr. Allison Geier, deemed it medically necessary for Dorothy Paulsen to receive assisted living care, and prescribed placement in an assisted living facility for Dorothy.
18. Dorothy Paulsen moved into Benet Place Assisted Living Center on or about February 1, 2010, except for brief periods of hospitalization or nursing home care, and has resided there ever since.
19. Benet Place Assisted Living has been a qualified assisted living center under the terms of Dorothy Paulsen's long-term care policy at all times relevant to this action.
20. Upon Dorothy Paulsen's placement in assisted living care, Ability Insurance Co. received a claim made on behalf of Dorothy Paulsen for benefits under her long-term care policy.
21. Ability Insurance Co. denied Dorothy Paulsen's claim for benefits.

22. Ability Insurance Co.'s denial of Dorothy Paulsen's claim for benefits was appealed.
23. Following the appeal, Ability Insurance Co. admitted Dorothy Paulsen qualified for assisted living care benefits under her long-term care policy and agreed to pay benefits, but limited the amount of benefits paid to Dorothy Paulsen to forty dollars a day.
24. Ability Insurance Co. continues to pay Dorothy Paulsen's benefits at the rate of forty dollars a day, instead of at the rate of sixty-four dollars a day required by her policy.
25. Defendants failed to pay, and continue failing to pay, the full amount of benefits due Dorothy Paulsen under her long-term care policy.

## Count 2 - BREACH OF GOOD FAITH AND FAIR DEALING

26. Paragraphs 1-25 are incorporated as if set forth again here.
27. The long-term care policy sold to Dorothy Paulsen carries with it an implied duty of good faith and fair dealing.
28. No reasonable basis exists for defendants' failure to pay the full amount of benefits due Dorothy Paulsen, and defendants know or reasonably should know that no reasonable basis exists for the failure to pay the full amount of benefits due.
29. Defendants' refusal to pay the full amount of benefits due Dorothy Paulsen is in violation of their duty of good faith and fair dealing.
30. Defendants' refusal to pay the full amount of benefits due has further damaged Dorothy Paulsen by causing her emotional distress and loss of enjoyment of life.

## Count 3 - PUNITIVE DAMAGES

31. Paragraphs 1-30 are incorporated as if set forth again here.
32. Ability Resources Inc. adopted a strategy to deny claims for the purpose of increasing its profits at the expense of policyholders entitled to benefits under their policies.
33. Defendants have engaged in a pattern of deficient and improper claim handling for the purpose of increasing profits at the expense of legitimate claims made by deserving policyholders, including (but not limited to) Dorothy Paulsen.
34. Ability Resources Inc.'s deficient and improper claim handling procedures have been brought specifically to Ability's attention in South Dakota.

35. Defendants have failed or refused to correct their deficient and improper claim handling procedures.
36. Defendants have aided and abetted each other for the purpose of improperly denying insurance claims without a reasonable basis, including Dorothy Paulsen's claim.
37. Defendants have acted with malice, fraud or oppression toward Dorothy Paulsen, making punitive damages appropriate to deter such conduct in her case and in other cases.

WHEREFORE, Plaintiff seeks damages for breach of contract and for breach of the duty of good faith and fair dealing in such amounts as are supported by a showing at trial. Plaintiff also seeks punitive damages in an amount sufficient to punish the defendants, deter them from future similar conduct, and provide an inducement for them to correct the wrongfully denied claims of other policyholders in positions similar to that of Dorothy Paulsen. Plaintiff seeks prejudgment interest, costs, and such other relief as is deemed just and appropriate under the circumstances.

Plaintiff demands trial by jury.

Dated this 7th day of July, 2011.

TURBAK LAW OFFICE, P.C.

By: _____
Nancy J. Turbak Berry
Attorney for Plaintiff
1301 4th Street NE
Watertown, SD 57201
605-886-8361
nancy@turbaklaw.com