
FILED
OCT 29 2012

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

```
*****************************************************************************
DOROTHY PAULSEN,                      *
                                      *         1:11-CV-01019
                Plaintiff,            *
                                      *         ORDER AND
         -vs-                         *         OPINION
                                      *
ABILITY INSURANCE CO., f/k/a ABILITY  *
RESOURCES, INC.; MEDICO LIFE          *
INSURANCE CO.; ABILITY REINSURANCE    *
HOLDINGS LTD., a Bermuda Ltd. Co.; and *
ABILITY REINSURANCE LTD., a Bermuda   *
Ltd. Co.;                             *
                                      *
                Defendant.            *
                                      *
*****************************************************************************
```

Dorothy Paulsen filed a complaint against defendants alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and seeking punitive damages. These accusations stem from a long-term care insurance policy purchased by plaintiff from Medico Life Insurance Company ("Medico") in 1996, a policy which defendants admit Ability Insurance Company ("Ability") has assumed the responsibility to adjust, manage and pay claims as appropriate under the policy. Plaintiff contends that defendants initially failed to pay benefits due under the policy and that, following appeal of this decision, only then did Ability provide benefits under the plan but only a portion of the benefits rightly due. Plaintiff alleges that only later, after filing this case, did defendants begin paying the full benefits owed.

Ability, joined by co-defendants Ability Reinsurance Holdings Limited and Ability Reinsurance Limited, filed a motion for partial summary judgment on plaintiff's claim of emotional damages resulting from the alleged breach of the covenant of good faith. Defendants argue that there is no evidence that plaintiff suffered emotional distress by defendants' actions because (1) plaintiff was never aware of Ability's coverage decisions and (2) plaintiff is unable to provide any objective proof that she suffered emotional distress caused by defendants. Defendants also argue that the harms alleged by plaintiff do not constitute an "exceptional case."

## I. BACKGROUND

### A. Standard of Review

Fed. R. Civ. P. 56 requires that this court dismiss all claims for which the movant shows there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. The movant must support the motion with evidence admissible at trial in order to meet its initial burden showing the absence of a genuine issue of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970), *superseded on other grounds by* Celotex Corp. v. Catrett, 477 U.S. 317 (1986). If the moving party meets its initial burden, which may be achieved by showing a lack of evidence for a necessary element of plaintiff's claim, see Whitley v. Peer Review Sys., Inc., 221 F.3d 1053, 1055 (8th Cir. 2000), *abrogated on other grounds by* Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011), the nonmoving party cannot merely rest upon allegations or denials in its pleadings to defeat the motion, Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). Instead, the nonmoving party must "substantiate his allegations with enough probative evidence to support a finding in his favor" by citing to particular materials in the record which support the assertion that a fact is genuinely disputed. Roeben v. BG Excelsior Ltd. P'ship, 545 F.3d 639, 642 (8th Cir. 2008). A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The court must view the admissible evidence in a light favorable to the nonmoving party and give that party the benefit of all reasonable inferences drawn from the evidence. Country Life Ins. Co. v. Marks, 592 F.3d 896, 898 (8th Cir. 2010). However, the scope of admissible evidence is quite finite: "Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment." Liberty Lobby, 477 U.S. at 248.

### B. Factual Background

Viewing the evidence in the light most favorable to plaintiff, the facts are as follows. In November 1996, Medico Life Insurance Company ("Medico") sold plaintiff a long-term care policy ("policy"). According to plaintiff, this policy and other Medico long-term care policies were sold to Ability at some point between November 1996 and January 2010. Ability assumed

2

the responsibility for adjusting, managing, and paying claims when plaintiff began making claims on her policy. Plaintiff asserts that she has always paid the policy premiums, which eventually amounted to over $1,000 annually, and that the policy provides benefits of sixty-four dollars a day "for qualified assisted living care when that care is deemed medically necessary by the policyholder's treating physician."

In January 2010, plaintiff's treating phyisican prescribed placement for plaintiff in an assisted living facility after deeming the move medically necessary. Plaintiff moved to Benet Place Assisted Living Center ("Benet Place") in February 2010 and has resided there, with limited interruption for hospital care, ever since. Plaintiff alleges that Ability initially denied plaintiff's claim for benefits outright when plaintiff entered Benet Place and that only after appealing this decision through a process provided by state administrative rule (S.D. Admin. R. 20:06:21:89) did Ability agree to pay a forty dollar benefit per day, or 50% of the maximum daily benefit of eighty dollars or nearly two-thirds of what Ability allegedly owed plaintiff under the terms of the policy. Ability confirmed it would pay this reduced benefit rate on March 31, 2010. Plaintiff filed this case on July 8, 2011. Defendants subsequently paid plaintiff the accrued difference between the reduced rate and the rate allegedly due under the policy, plus interest, in checks mailed on November 23, 2011, and July 31, 2012.

Affidavits filed by plaintiff's daughter and son indicate that plaintiff took a substantial amount of comfort in the policy taking care of her needs before she entered Benet Place. Plaintiff's daughter averred that plaintiff's "short term memory was deteriorating" at the time she entered Benet Place, a condition her treating physician in a deposition referred to as "mild dementia," but that such a condition was not so debilitating that plaintiff would have to enter an assisted living center on that basis alone. Her daughter also recalled that her mother opened a bill from Benet Place soon after beginning her time there and became "very upset about the bill" because the care "was costing more each month than what she got in Social Security." This cost was allegedly the result of Ability's decision to not provide benefits, or to provide insufficient benefits under the policy, at that time. Both children asserted that plaintiff was upset about these bills to the point that special arrangements were made at Benet Place to hold her mail until her daughter could pick it up so that plaintiff would not see the bills. Yet another affidavit taken

3

from a nursing supervisor at Benet Place supported the existence of this arrangement after plaintiff became upset when another resident received a billing statement from Benet Place. The nurse stated that, in her upset state, plaintiff declared that she wanted to leave the facility "if she had to pay for the bill herself." As of September 2012, plaintiff's son asserted that plaintiff's dementia advanced to the point where she does not currently know that she has a long-term care policy.

Defendants cite numerous unchallenged facts in support of the motion. Defendants note that plaintiff's son admitted in a deposition that plaintiff (1) is not currently aware of the dispute with defendants, (2) had been taking an antidepressant for a period of time before being admitted to Benet Place, and (3) was upset that she was at an assisted living facility. Defendants also cite the deposition of plaintiff's daughter to note that she admitted that (1) plaintiff did not communicate with defendants, (2) she believed that plaintiff's belief that she could not live in Benet Place was not the result of a letter from defendants, and (3) plaintiff was unaware of the lawsuit when the lawsuit was filed. Finally, defendants provide the deposition of plaintiff's treating physician, who admitted that she (1) did not diagnose plaintiff as being under stress before she moved to Benet Place, (2) had prescribed plainitff antidepressants four-to-five years before the move, and (3) did not diagnose plaintiff as being under stress after she moved to Benet Place.

## II. ANALYSIS

The rule of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) requires adherence to the appropriate substantive law of a particular state in a diversity case. South Dakota is the forum state and its choice-of-law rules are applied. *See* Allianz Ins. Co. of Can. v. Sanftleben, 454 F.3d 853, 855 (8th Cir. 2006). Plaintiff claims emotional distress resulted from defendants' breach of the covenant of good faith, which rests in contract law.

> It is settled law in this state that a breach of duty may arise from a contractual relationship, and while matters complained of may have their origin in contract, the gist of an action may be tortious. Conduct which merely is a breach of contract is not a tort, but the contract may establish a relationship demanding the exercise of proper care and acts and omissions in performance may give rise to tort liability.

4

Kunkel v. United Sec. Ins. Co. of N.J., 168 NW2d 723, 733 (S.D. 1969) (internal citations omitted).

The South Dakota Supreme Court has explicitly declined to create a tort of breach of good faith that is independent of the claim for breach of the covenant of good faith arising out of contract law, Garrett v. BankWest, Inc., 459 NW2d 833, 842 (S.D. 1990), although the Court subsequently interpreted Kunkel as effectively creating such a tort out of necessity, see Stene v. State Farm Mutual Automobile Insurance Co., 583 NW2d 399, 403 (S.D. 1998) (citing Matter of Cert. of a Question of Law, 399 NW2d 320, 322 (S.D. 1987)). Thus, defendants' motion is to dismiss a portion of a claim that, while de facto in tort, is de jure in contract law—a point on which both parties agree. A South Dakota statute requires that in claims based in contract law, the applicable law is that "of the place where [the contract] is to be performed." SDCL 53-1-4. "Generally, unless the parties agree otherwise, an insurance contract is 'made' at the place where the last act necessary to its completion is accomplished." Great W. Cas. Co. v. Hovaldt, 603 NW2d 198, 201 (S.D. 1999). Accordingly, South Dakota law governs substantive issues in this case.

"To recover damages for emotional distress in South Dakota, a plaintiff must establish that he sustained a pecuniary loss because of the bad faith of an insurer." Athey v. Farmers Ins. Exch., 234 F.3d 357, 363 (8th Cir. 2000) (citing Kunkel, 168 NW2d at 734). In breach of contract claims, damages are generally measured by the harm proximately caused by the defendant's acts, or that harm that "in the ordinary course of things, would be likely to result therefrom." SDCL 21-2-1. Additionally, "[n]o damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin." Id.

Defendants limit the scope of their motion to challenge whether plaintiff has pled sufficient facts to establish defendants were the proximate cause of plaintiff's alleged emotional distress and that those damages caused sufficient harm. In particular, defendants claim that (1) plaintiff was not aware of Ability's coverage decisions, (2) plaintiff is unable to provide any objective proof that she suffered emotional distress caused by defendants' denial of full benefits, and (3) plaintiff is unable to prove her alleged harms are sufficient enough to be an "exceptional case" under South Dakota case law, a necessary element for obtaining emotional damages.

Defendants contend that an emotional damages claim in a contract matter requires both a proximate cause analysis and proof that the harms indicate an "exceptional case" in order to survive summary judgment. They cite the South Dakota Supreme Court's ruling in <u>Kunkel v. United Security Insurance Company of New Jersey</u>, 168 NW2d 723, for this proposition. The Court derived this analysis from its discussion and approval of a California ruling which found that damages for "mental suffering" were appropriate against an insurer for a breach of the covenant of good faith. <u>Id.</u> at 734.

That case, <u>Crisci v. Security Insurance Co.</u>, 426 P.2d 173 (Cal. 1967), resulted from a claim that defendant-insurer's failure to settle an insurance claim as a prudent insurer should do constituted a breach of the covenant of good faith to the plaintiff-insured. The plaintiff was an elderly woman who owned an apartment building where claimants June DiMare and her husband were tenants. <u>Id.</u> at 175. Ms. DiMare was descending the apartment's outside wooden staircase when a step gave way. She fell through the opening up to her waist and was left hanging fifteen feet above the ground. <u>Id.</u> She alleged that the step broke because of plaintiff's negligent maintenance and sued for physical and mental injuries and medical expenses in the amount of $400,000. <u>Id.</u> Counsel employed by the insurer was able to negotiate with the DiMares' counsel to settle the claim for $9,000, of which the insured offered to pay $2,500. <u>Id.</u> at 175–76. The insurer refused to accept the settlement demand and a jury awarded Ms. DiMare $100,000 and her husband $1,000, of which the insurance company paid $10,000 after an appeal. <u>Id.</u> at 176. The DiMares sought to collect the balance of the judgment, collecting $22,000 from the insured, an interest in a portion of the insured's claims to property, and an assignment of the insured's cause of action against the defendant. The insured became indigent as a result, which in turn caused "a decline in [her] physical health, hysteria, and suicide attempts." <u>Id.</u>

The Court in <u>Crisci</u> noted that the reason for limiting recovery for mental distress damages is that "to permit recovery of such damages would open the door to fictitious claims, to recovery for mere bad manners, and to litigation in the field of trivialities." <u>Id.</u> at 179 (citation omitted). The Court also emphasized the fact that because the breach constitutes a tort and because the defendant's actions "resulted in substantial damages apart from those due to mental distress, the danger of ficitious claims is reduced." <u>Id.</u>

Kunkel seemed to focus on this last finding and distilled the California case down to the quoted principle that "a plaintiff who as a result of a defendant's tortious conduct loses his property and suffers mental distress may recover not only for the pecuniary loss but also for his mental distress." Id. at 734 (quoting Crisci, 426 P.2d at 179). Kunkel also cited approvingly a Fifth Circuit case where the court found some evidentiary support for an award of $10,000 in general damages on a claim of bad faith because of an insurer's bad faith decision to not settle for a much smaller amount than the final judgment. Kunkel, 168 NW2d at 734 (citing State Farm Mut. Auto. Ins. Co. v. Smoot, 381 F.2d 331, 333 (5th Cir. 1967)). The excess judgment fell on the insured's shoulders and when the insured tried to sell his house, but was unable to do so because of a judgment and lien against it, he eventually lost his house and as a result of a foreclosure by FHA, his credit was destroyed. Smoot, 381 F.2d at 338.

Turning to the case before it, Kunkel found that the plaintiff did not suffer such exceptional circumstances. Specifically, the Court found that "there is no evidence of what we consider an invasion of a property right similar to what occurred in the Crisci and Smoot cases. There is no evidence that Kunkel suffered any financial distress, lost either property or employment, or *otherwise sustained pecuniary loss because of the excess judgment*." Kunkel, 168 NW2d at 734 (emphasis added). Plaintiff argues that this statement indicates that a case qualifies as an "exceptional case" by showing a pecuniary loss.

Plaintiff is incorrect. The plaintiff in Kunkel alleged pecuniary damages in the amount of the unpaid judgment plus interest. Id. at 724–25. The Court found as a matter of law that alleging such damages without proof of pecuniary loss was insufficient to support an award of damages for mental suffering. *See* id. at 136. In other words, the insured did not allege that he suffered financial distress, lost either property or employment, or that he sustained pecuniary loss *because* of the excess judgment, only that he sustained the excess judgment. Kunkel was a case later described by the South Dakota Supreme Court as a ruling "based on a lack of evidence and not a lack of a cause of action." Matter of Certification, 399 NW2d at 322. Hence, plaintiff is correct that a plaintiff needs only to show that defendants' bad faith caused a pecuniary loss to have a prima facie claim. However, the survivability of that claim depends upon what pecuniary damages are supported by facts. The Kunkel plaintiff's claim of emotional damages was

7

sufficient to survive a motion to dismiss, but the plaintiff had to provide evidence of some kind of pecuniary loss outside the excess judgment to survive summary judgment.

In this case, as in Kunkel, plaintiff is only alleging pecuniary damages in the amount directly incurred because of defendants' alleged bad faith, namely, the failure to pay benefits due under the policy. Plaintiff does not allege that she suffered any additional pecuniary loss outside of the costs she incurred at Benet Place that would otherwise have been covered under the policy. The assertion that plaintiff had to "deplet[e] her own funds to pay for her long term care," without more, is insufficient. Plaintiff has received all money due, including interest. For this reason, plaintiff is unable to present a genuine issue of fact that her claim is an exceptional case. This is a necessary element for obtaining emotional damages in a claim of a breach of the implied covenant of good faith and fair dealing under South Dakota law. Kunkel, 168 NW2d at 734. Because there is a lack of evidence on a necessary element of plaintiff's claim of emotional damages, defendant's motion for summary judgment should be granted if this were the final say on the issue. Whitley, 221 F.3d at 1055.

However, subsequent rulings of the South Dakota Supreme Court seem to indicate, without abrogating Kunkel (indeed, without citing Kunkel), that an allegation of emotional damages resulting from a breach of the covenant of bad faith must be analyzed under either of the frameworks for determining whether negligent or intentional infliction of emotional distress exists. See Stene, 583 NW2d at 404 ("Stene sought damages for 'emotional distress.' It is unclear whether he claimed negligent or intentional infliction of emotional distress. Regardless, the outcome is the same."). This directly conflicts with the framework in Kunkel, which requires a showing of proximate cause and an exceptional case indicating "any financial distress, lost . . . property or employment, or otherwise sustained pecuniary loss because of the excess judgment." Kunkel, 168 NW2d at 734. The Eighth Circuit declined to interpret Stene as controlling over Kunkel two years after the Court rendered its Stene decision. See Athey, 234 F.3d at 363. Judge Schreier similarly did not apply Stene when determining whether a jury award of $200,000 for damages, including emotional damages, for a breach of the covenant of bad faith claim was excessive. See McElgunn v. Cuna Mut. Ins. Soc'y, 700 F. Supp. 2d 1141, 1162 (D.S.D. 2010). By my research, the South Dakota Supreme Court has not had reason to cite Stene for the

8

proposition that courts must apply these tort analyses when the insured does not directly assert these tort claims in a complaint, but seeks only "emotional damages" for an alleged breach of the covenant of bad faith or bad faith tort.

Whether Stene is an aberration is not known but this court must apply the decisions of the highest court in a state as the final authority on state law. R.W. Murray Co. v. Shatterproof Glass Corp., 697 F.2d 818, 826 (8th Cir. 1983). "When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." Id. (quoting West v. AT&T Co., 311 U.S. 223, 236 (1940)). The South Dakota Supreme Court, in failing to reference Kunkel or its framework in its decision in Stene, has not given "clear and persuasive" indication that it was modifying, limiting or restricting Kunkel which is necessary for this court to clearly find Stene abrogates Kunkel on this matter. It is also possible that the complaint in Stene asserted emotional damages independent of any breach of the covenant of good faith and is thus distinguishable from this case.

Regardless of whether Stene is distinguishable, plaintiff's claim does not meet the elements of either a claim of negligent or intentional infliction of emotional distress under South Dakota law. In order to sustain a claim for negligent infliction of emotional distress, plaintiff must show manifestation of physical symptoms. Wright v. Coca-Cola Bottling Co., 414 NW2d 608, 609–10 (S.D. 1987). Plaintiff does not aver facts indicating any physical symptoms, instead arguing that a claim of emotional distress may lie without facts indicating physical symptoms.

The only viable remaining theory is a claim of intentional infliction of emotional distress, which does not require physical symptoms. Instead, the tort requires:

> (1) extreme and outrageous conduct by the defendant; (2) the defendant intended to cause severe emotional distress; (3) defendant's conduct was the cause in-fact of plaintiff's severe emotional distress; and (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct.

Tibke v. McDougall, 479 NW2d 898, 906 (S.D. 1992). "Proof under this tort must exceed a rigorous benchmark." Henry v. Henry, 604 NW2d 285, 288 (S.D. 2000). In order to meet the first element, plaintiff must prove that defendant's conduct "exceed[ed] all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does

9

cause, mental distress of a very serious kind." Id. at 907 (quoting Groseth Intern., Inc. v. Tenneco, Inc., 410 NW2d 159, 169 (S.D. 1987). The conduct must be "regarded as atrocious, and utterly intolerable in a civilized community." Id. Defendant is accused of not paying benefits under the long-term care insurance policy. While this accusation is serious and allegedly committed against a particularly vulnerable member of society, none of defendant's alleged acts arise to the level of atrocities. Defendant's act was to deny benefits, albeit to a more vulnerable individual than the plaintiff in Stene. This is the major factual distinction between this case and Stene. This quality alone could not permit a reasonable jury to find in favor of plaintiff to exceed the "rigorous benchmark" of whether this behavior constitutes an atrocity. Under Stene, I would have to find that genuine issues of fact exist whether there was "extreme and outrageous" conduct to support a claim of intentional infliction of emotional distress. *See* Stene, 583 NW2d at 404. I find there are no such issues. Under Kunkel, the insured here does not have the required exceptional circumstances.

There are no genuine issues of fact under either Stene or Kunkel and a partial summary judgment should be granted.

### III.  ORDER

IT IS ORDERED that defendants' Motion, Doc. # 42, for Partial Summary Judgment on plaintiff's claim for emotional damages is granted.

Dated this 27th day of October, 2012.

BY THE COURT:

*[signature]*

ATTEST:
JOSEPH HAAS, CLERK

CHARLES B. KORNMANN
United States District Judge

BY *[signature: Barbara Joseph]*
DEPUTY
(SEAL)

10